IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| HENRY JOSEPH STEVENS,  §<br>Fed. Reg. No. 60316-177,  §<br>  §<br>Plaintiff,  §<br>  §<br>v.  §<br>  §<br>VERNON TEXAS POLICE DEP'T, *et al.*,  §<br>  §<br>Defendants.  § | Civil Action No. 7:22-cv-00024-M-BP |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6), Brief in Support, and Appendix (ECF Nos. 26-28, respectively); Plaintiff's Initial Response to Defendants' Motion (ECF No. 380; Plaintiff's Second Motion/Affidavit/Declaration in Opposition to Defendants' Motion for Summary Judgment (ECF No. 44); and Plaintiff's Second Response to Defendants' Motion (ECF No. 49). After considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Barbara M. G. Lynn **GRANT** the Motion and **DISMISS with prejudice** Plaintiff's claims against Defendants for violating his civil rights and **DISMISS without prejudice** Plaintiff's tort claim brought under state law**.**

**I.   BACKGROUND**

Plaintiff Henry Joseph Stevens ("Stevens") is an inmate in USP Pollock, a Bureau of Prisons facility in Pollock, Louisiana. ECF No. 1 at 1. Stevens filed suit against Vernon, Texas Police Department, Officer Trayhold, and Unknown Defendants on December 15, 2021. *Id.* Because "Vernon, Texas Police Department" is not a separate legal entity, the City of Vernon (the "City") appeared in the case by filing the Motion to Dismiss on the premise that Stevens intended

to sue the City, as the employer of the police officers involved in this incident. ECF No. 27 at 5. The City also assumes that Stevens mistakenly identified the officer who allegedly broke his ankle as Officer "Trayhold," instead of Trejo. *Id*. Based on that understanding, the Court refers to Officer Trejo, not Trayhold. Although Officer Trejo was not served with the Complaint, he appeared by joining the Defendants' Motion to Dismiss. *Id*. at 5-6. In his Amended Complaint, Stevens deleted "Unknown Defendants" as party defendants in the case and referred to his Original Complaint for all other factual assertions. *See* ECF No. 11.

Stevens alleges that during an arrest and after he was detained in handcuffs, Officer Trejo stomped on his ankle while he was either seated on the ground or as other persons lifted him from the ground. ECF No. 1 at 2, 5. He claims that Officer Trejo did so maliciously and sadistically to inflict pain, applying much more force than needed to apprehend Stevens since he was already compliant with the officers' instructions and was not resisting arrest. ECF No. 1 at 1, 6. Stevens asserts that this application of force separated the ligaments and tendons in his foot from the bone and fractured his ankle. ECF No. 1 at 1. As a result, he brought a civil rights claim against Officer Trejo, other unknown officers of the Vernon Police Department, and the City under 42 U.S.C. § 1983. ECF No. 1 at 3, 6-7. He also pleaded a claim against the City for battery under the Texas Tort Claims Act ("TTCA") for Officer Trejo's intentional actions as an employee of the City. *Id*. at 7-8.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Rules require that a pleading stating a claim for relief contain "a short and plain statement of

the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a). A complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, courts must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 557).

When dealing with a *pro se* party, courts are to liberally construe the pleadings, taking all well-pleaded allegations as true. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). But "even a liberally-construed *pro se* . . . complaint must set forth facts giving rise to a claim on which relief may be granted." *Levitt v. Univ. of Texas at El Paso*, 847 F.2d 221, 224 (5th Cir. 1988) (citing *Bounds v. Smith*, 430 U.S. 817, 825 (1977)). Thus, a court inquires "whether within the universe of theoretically provable facts there exists a set which can support a cause of action under [the] complaint." *Covington v. Cole*, 528 F.2d 1365, 1370 (5th Cir. 1976).

  **B. Qualified Immunity**

"Qualified immunity shields government officials performing discretionary functions from liability unless their conduct violates clearly established statutory or constitutional rights of which

a reasonable person would have known." *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (citing *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). "[T]he immunity issue must be resolved at the earliest possible stage of the litigation since it entails an entitlement to immunity from suit and not merely a defense to liability." *Id*. (citing *Hunter v. Bryant*, 502 U.S. 224, 226 (1991)). Qualified immunity can be decided at the Motion to Dismiss stage as it is the earliest possible stage in litigation. *Carswell v. Camp*, 37 F.4th 1062, 1068 (5th Cir. 2022)

To overcome the defense of qualified immunity, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citations omitted). A good-faith assertion of qualified immunity alters the usual burden of proof, shifting it to the plaintiff to show that the defense is not available. *Ratliff v. Aransas Cnty.*, 948 F.3d 281, 287 (5th Cir. 2020), *cert. denied*, 141 S.Ct. 376 (2020).

### C. Municipal Liability

"A municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondent superior theory." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). However, municipalities may be held liable under § 1983, but only where a custom, policy or practice is the moving force behind a constitutional violation. *Hampton Co. Nat'l Sur., LLC v. Tunica Cty.*, 543 F.3d 221, 224 (5th Cir. 2008). Establishing "[m]unicipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (quoting *Monell*, 436 U.S. at 694).

### D. Dismissal With or Without Prejudice

There exists a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). As a result, courts generally allow plaintiffs at least one opportunity to amend. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (2002). Nonetheless, courts may appropriately dismiss an action with prejudice if a court finds that the plaintiff has alleged his best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999). Likewise, a court may dismiss a complaint with prejudice, thus foreclosing the plaintiff's opportunity to amend, whenever amendment of the pleadings would be futile. *Stem v. Gomez*, 813 F.3d 205, 215–16 (5th Cir. 2016).

## III. ANALYSIS

Stevens alleges that Officer Trejo violated his Eight Amendment right to be free from cruel and unusual punishment when he maliciously and sadistically injured his ankle during an arrest. ECF No. 1 at 1, 6. However, all claims that law enforcement officers used excessive force during an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see Rankin v. Klevenhagen*, 5 F.3d 103, 106–07 (5th Cir. 1993) (finding that Eight Amendment protections extend only to convicted prisoners and pretrial detainees subjected to force "in an effort to preserve institutional security"). Thus, because Stevens is proceeding *pro se*, the Court liberally construes his Amended Complaint to allege an excessive force violation of the Fourth Amendment.

### A. Stevens has not pleaded sufficient facts to defeat Officer Trejo's qualified immunity defense.

When an official raises a qualified immunity defense, the plaintiff must allege facts that viewed in his favor show that the defendant (1) violated a constitutional right (2) that was clearly established at the time of the defendant's conduct. *See Bryant v. Gillem*, 965 F.3d 387, 391 (5th

5

Cir. 2020); *Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020). The issue of qualified immunity should be decided at the earliest opportunity, including at the Motion to Dismiss stage. *Carswell*, 37 F.4th at 1068. Because Officer Trejo asserted qualified immunity as a defense to Stevens's excessive force claim (ECF No. 27 at 9), Stevens bears the burden to show that the defense does not apply. *Ratliff*, 948 F.3d at 287.

The Court analyzes Stevens's excessive force claim under the Fourth Amendment's "objective reasonableness standard, rather than under a substantive due process standard." *Graham*, 490 U.S. at 388. The test to determine whether a use of force was reasonable, however, "is not capable of precise definition or mechanical application." *Id*. at 396. The proper application of the reasonableness test requires careful attention to the facts and circumstances of each case, including (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. Thus, the overarching question becomes whether "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Id*. at 397.

Generally, a court must accept as true all allegations in pleadings in a light that is favorable to the nonmovant. Here, Stevens alleges that Officer Trejo injured his ankle while he was restrained in handcuffs and not resisting arrest. ECF No. 1 at 2, 15. He claims that Trejo did so maliciously and sadistically to inflict pain, while Stevens was compliant and not posing an immediate threat to the safety of the officer or others. *Id*. at 1, 21. Stevens alleges that Trejo's excessive force broke his ankle. *Id.* Accepting these allegations as true, Stevens has sufficiently pleaded an excessive force violation against Officer Trejo. *Graham*, 490 U.S. at 396. Moreover, if

6

Officer Trejo applied force to Stevens's ankle maliciously and sadistically when Stevens was not resisting arrest, then he violated a constitutional right that was clearly established at the time. *See Aguirre v. City of San Antonio*, 995 F.3d 395, 416 (5th Cir. 2021) ("It has long been clearly established that, when a suspect is not resisting, it is unreasonable for an officer to apply unnecessary, injurious force against a restrained individual, even if the person had previously not followed commands or initially resisted the seizure."); *see also Curran v. Aleshire*, 800 F.3d 656, 661 (5th Cir. 2015) (holding that clearly established law recognized unreasonableness of officer's banging plaintiff's head against a wall after she stopped resisting).

However, when the opposing parties tell two different versions of the incident at issue and video evidence in the record contradicts the Plaintiff's version, the Court can choose to disregard the Plaintiff's version of the facts for purposes of ruling on a dispositive motion such as a motion to dismiss. *Scott v. Harris*, 550 U.S. 372, 380 (2007). This is particularly relevant in the context of analyzing the validity of a claim against a government official who is entitled to qualified immunity measured on an objective basis. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Here, Defendants attached to their Motion to Dismiss copies of video and audio recordings taken from body cameras that Officer Trejo, Officer Beck, and Officer Boatwright, the arresting officers, wore at the time of Stevens's arrest and a vehicle dash camera. See ECF No. 28. The videos show that Officer Trejo ran after Stevens on foot as Stevens ran away to avoid being arrested. ECF No. 27, App. 2, at 0:02. Trejo ordered Stevens several times to get on the ground and warned him that he would tase him if he did not stop running, before finally firing the taser at Stevens. *Id.* at 0:10. The taser connected with Stevens, and he stumbled to the ground, where Officer Trejo tackled him. *Id.* at 0:18-0:22. As Officer Trejo came into contact with Stevens, his body camera apparently was jostled, and the video stopped, although the audio continued to be

recorded. *Id*. at 0:22. The audio recording contains sounds of a struggle between Stevens and Trejo and Trejo's voice repeatedly ordering Stevens to "Stop! Quit reaching for stuff!" (*Id*. at 0:33) and "get on the ground." (*Id*. at 0:41).

Although Trejo's body camera stopped recording video of the incident with Stevens, the body cameras of Officer Beck and Officer Boatwright recorded the parts of the arrest that Officer Trejo's body camera did not record. When the other officers' cameras started recording, Stevens was not handcuffed. *Id*., App. 3 at 0:01-0:10; *id*., App. 4 at 0:01. The video shows Officer Beck and Officer Boatwright help Officer Trejo place Stevens into handcuffs, roll him over, and then sit him upright to help him breathe better. *Id*., App. 3 at 0:30-1:59; *id*., App. 4 at 0:01-0:47.

Stevens alleges that during this time, Officer Trejo stomped on his foot and broke his ankle. ECF No. 49 at 9. Stevens directs the Court to Officer Beck's body camera to support his claim. *Id*. That video shows Officer Trejo straddling Stevens's left leg. *Id*., App. 3 at 0:31-0:37. The camera points away for approximately three seconds, and when it refocuses on Officer Trejo, it shows him stepping aside from Stevens. *Id*. at 0:40. Stevens alleges that in those three seconds Officer Trejo stepped on his ankle. As further proof, Stevens points the Court to Officer Boatwright's body camera video, which records Stevens saying, "he broke my foot," allegedly in reference to Officer Trejo. *Id*., App. 4 at 0:22-0:23. Stevens argues that the video shows that Trejo maliciously stomped on his ankle. ECF No. 49 at 9.

After viewing the videos, the Court cannot conclude that the video evidence supports Stevens's claim. There is no video or audio evidence recording the alleged stomping on Stevens's foot, ankle, or other part of his body. There is no video or audio evidence of Stevens screaming, crying out, or making any statement related to the stomping at the time of the incident. Nothing in the video and audio feed from body and dash cameras show or suggest that Officer Trejo stomped

on Stevens's ankle. Consequently, there is no evidence that Officer Trejo or other officer exercised excessive force toward Stevens or violated clearly established law regarding the use of excessive force. The video and audio evidence showing no constitutional violation rebuts Stevens's claims that the Defendants violated his constitutional rights under clearly established law.

Defendants filed the video of the entire arrest from multiple angles with accompanying audio recordings, and there is no reasonable dispute as to what the video and audio depict. Under these circumstances, Judge Lynn should dismiss Stevens's claim against the Defendants under 42 U.S.C. § 1983 with prejudice because he has alleged his best case against them, and any further amendment of his pleadings would be futile. No further opportunity to amend his claims against the Defendants is warranted. *Kremelberg v. Keeling*, No. 3:15-CV-3695-K-BH, 2016 WL 7744408, at *11 (N.D. Tex. 2016), *rec. adopted*, 2017 WL 131822 (N.D. Tex. 2017).

**B.  Stevens cannot plead a proper municipal liability claim against the City.**

Stevens bases his claims against the City on alleged violations of his constitutional rights by Trejo. ECF Nos. 1 at 4. A municipality, however, cannot be liable under § 1983 on a theory of respondeat superior. *Monell*, 436 U.S. at 689; *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997). The City is not liable to Stevens because of Trejo's alleged violations of his constitutional rights simply because it employed him as a police officer. A city may only be liable for actions that implement or execute policies officially adopted by the city's officers. *Monell*, 436 U.S. at 690-91.

To survive a motion to dismiss, Stevens must plead facts with sufficient particularity to meet all of the elements of municipal liability set forth in *Monell*. *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992). He must plead facts to show "a policymaker, an official policy, and a violation of constitutional rights whose 'moving force' is the policy or custom." *Fennell*, 804 F.3d at 412.

Stevens asserts that the Vernon Police Department has an unspoken custom of assaulting black men who resist arrest or flee from arresting officers once officers take the black men into custody. ECF No. 18 at 5. He also argues that the Vernon Police Department trains its officers in mechanical positioning, which tells officers to "stomp on legs in the ankle area to cause permanent injury," and that an unnamed individual stated that the unofficial policy of the Vernon Police Department was to apply mechanical positioning to black men who flee from police officers. *Id*. These allegations, though thinly pleaded, show a policy or custom that was the moving force behind the alleged constitutional violation.

However, regardless of the existence of a policy or custom, Stevens still must establish that the City's policy or practice violated a constitutional right. Without an actual constitutional violation, any alleged custom or policy is irrelevant. *City of Los Angeles. v. Heller*, 475 U.S. 796, 799 (1986). Here, Stevens alleged the violation of his Fourth Amendment right to be free from excessive force during arrest. But as stated above, Stevens has not sufficiently pleaded facts to establish that Officer Trejo used excessive force against him. Thus, because Stevens has not pleaded a constitutional violation committed by Officer Trejo, the City is entitled to dismissal of his claims against it.

   **C.** **The Court should decline to exercise supplemental jurisdiction over Stevens's remaining state law claim against the City.**

Stevens also brings a battery claim against the Vernon Police Department under the TTCA for Officer Trejo's actions in the scope of his employment with the City. ECF No. 1 at 7. Having recommended that Judge Lynn dismiss Stevens's § 1983 claims against the City and Officer Trejo, the undersigned further recommends that she decline to exercise supplemental jurisdiction over Stevens's remaining claim against the City. Pursuant to 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction over a remaining claim after it "has dismissed all

claims over which it has original jurisdiction." In this case, Stevens's remaining claim against the City is solely a state law claim, and he has not alleged a separate jurisdictional basis for the Court to consider that claim. Accordingly, the undersigned recommends that Judge Lynn decline to exercise supplemental jurisdiction over Stevens's remaining claim against the City and dismiss that claim without prejudice to Stevens's right to bring it in state court.

### IV.   CONCLUSION

Because the video and audio evidence offered by Defendants show that Stevens cannot defeat Officer Trejo's qualified immunity defense, and any attempt to amend his pleadings would be futile, the undersigned **RECOMMENDS** that United States District Judge Barbara M. G. Lynn **GRANT** Defendants' Motion to Dismiss (ECF No. 26) and **DISMISS with prejudice** Plaintiff's claims against them. Since Plaintiff's remaining claim arises solely under state law, Judge Lynn should **DECLINE** to exercise supplemental jurisdiction over that claim and should **DISMISS without prejudice** Plaintiff's remaining state law claim so that he may pursue it in the appropriate state court should he choose to do so.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and

11

legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

    **SIGNED** on January 31, 2023.

                                                          _____
                                                          Hal R. Ray, Jr.
                                                          UNITED STATES MAGISTRATE JUDGE